# EXHIBIT 3

| | | |
|---|---|---|
| 1. Place and date<br>12 May 2005 | **UNIFORM TIME CHARTER PARTY<br>FOR OFFSHORE SERVICE VESSELS<br>CODE NAME: "SUPPLYTIME 89"** | PART I |
| 2. Owners/Place of business (full style, address and telex/telefax no.) (Cl. 1(a))<br>FSUE Arktikmorneftegazrazvedka | 3. Charterers/Place of business (full style, address and telex/telefax no.) (Cl. 1(a))<br>North Offshore AS (former TFDS Offshore AS and Troms Offshore Invest AS), Enterprise no. 929 987 020<br>Strandveien 106<br>9008 Tromsø, Norway | |
| 4. Vessel's name (Cl. 1(a))<br>Aldoma | 5. Date of delivery (Cl. 2(a))<br>6 March 2006 | 6. Cancelling date (Cl. 2(a) and (c))<br>N/A |
| 7. Port or place of delivery (Cl. 2(a))<br>India, Kakinada | 8. Port or place redelivery/notice of redelivery (Cl. 2(d))<br>Kirkenes to be agreed<br>(i) Port or place of redelivery<br><br>30 days<br>(ii) Number of days' notice of redelivery | |
| 9. Period of hire (Cl. 1(a))<br>14 months | 10. Extension of period of hire (optional) (Cl. 1(b))<br>2 x 1 year<br>(i) Period of extension<br><br>90 days<br>(ii) Advance notice for declaration of option (days) | |
| 11. Automatic extension period to complete voyage or well (Cl. 1(c))<br>N/A<br>(i) Voyage or well (state which)<br>N/A<br>(ii) Maximum extension period (state number of days) | 12. Mobilisation charge (lump sum and when due) (Cl. 2(b)(i))<br>N/A<br>(i) Lump sum<br>N/A<br>(ii) When due | |
| | 13. Port or place of mobilisation (Cl. 2(b)(i))<br>India, Kakinada | |
| 14. Early termination of charter (state amount of hire payable) (Cl. 26(a))<br>USD 81,000 | 15. Number of days' notice of early termination (Cl. 26(a))<br>N/A | 16. Demobilisation charge (lump sum) (Cl. 2(e) and Cl. 26(a))<br>~~USD 80,000~~<br>N/A |
| 17. Area of operation (Cl. 5(a))<br>World Wide within IWL, intention domestic India trade for ONGC | 18. Employment of vessel restricted to (state nature of service(s)) (Cl. 5(a))<br>N/A | |

This document is a computer generated SUPPLYTIME 89 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

Side margin text: Issued by The Documentary Committee of The Baltic and International Maritime Council (BIMCO), Copenhagen (First edition published 1975) REVISED 1989. Printed by BIMCO's idea. Adopted by International Support Vessel Owners' Association (ISOA), London. Copyright, published by The Baltic and International Maritime Council (BIMCO), Copenhagen September 1989.

"SUPPLYTIME 89" UNIFORM TIME CHARTER PARTY FOR OFFSHORE SERVICE VESSELS           PART I

| 19. Charter hire (state rate and currency) (Cl. 10(a) and (d) ) <br> USD 3,500.- | 20. Extension hire (if agreed, state rate) (Cl. 10(b)) <br> 1st option USD 3,600.- per day <br> 2nd option USD 3,600.- per day | |
|---|---|---|
| 21. Invoicing for hire and other payments (Cl. 10(d)) <br> (i) state whether to be issued in advance or arrears <br> **Arrears (within 5 days after invoice)** <br><br> (ii) state to whom to be issued if addressee other than stated in Box 2 <br> **As per box 2** <br><br> (iii) state to whom to be issued if addressee other than stated in Box 3 <br> **As per box 3** | 22. Payments (state mode and place of payment; also state beneficiary and bank account) (Cl. 10(e)) <br> **As per invoice.** | |
| 23. Payment of hire, bunker invoices and disbursements for Charterers' account (state maximum number of days) (Cl. 10(e)) <br> **15 days** | 24. Interest rate payable (Cl. 10(e)) <br> **LIBOR + 3 %** | 25. Maximum audit period (Cl. 10(f)) |
| 26. Meals (state rate agreed) (Cl. 5(c)(i)) <br> **N/A** | 27. Accommodation (state rate agreed) (Cl. 5(c)(i)) <br> **N/A** | 28. Mutual Waiver of Recourse (optional, state whether applicable) (Cl. 12(f)) <br> **N/A** |
| 29. Sublet (state amount of daily increment to charter hire) (Cl. 17(b)) <br> **See additional clause 38 - Profit split** | 30. War (state name of countries) (Cl. 19(a)) <br> **Russia, Norway, India** | |
| 31. General average (place of settlement – only to be filled in if other than London) (Cl. 21) <br> **Oslo** | 32. Breakdown (state period) (Cl. 26(b)(v)) <br> **N/A** | |
| 33. Law and arbitration (state Cl. 31(a) or 31(b) or 31(c), as agreed; if Cl. 31(c) agreed also state place of arbitration) (Cl. 31) <br> **Norwegian law, arbitration in Oslo, Norway** | 34. Numbers of additional clauses covering special provisions, if agreed | |
| 35. Names and addresses for notices and other communications required to be given by the Owners (Cl. 28) <br> **FSUE Arktikmorneftegazrazvedka** | 36. Names and addresses for notices and other communications required to be given by the Charterers (Cl. 28) <br> **North Offshore AS (former TFDS Offshore AS and Troms Offshore Invest AS)** <br> **Strandveien 106** <br> **9006 Tromsø, Norway** | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in the Charter consisting of PART I, including additional clauses if any agreed and stated in Box 34, and PART II as well as ANNEX "A" and ANNEX "B" as annexed to this Charter. In the event of a conflict of conditions, the provisions of PART I shall prevail over those of PART II and ANNEX "A" and ANNEX "B" to the extent of such conflict but no further. ANNEX "C" as annexed to this Charter is applicable and shall only apply if expressly so stated in Box 26.

Signature (Owners)                                    Signature (Charterers)

## PART II
### "SUPPLYTIME 89" Uniform Time Charter Party for Offshore Service Vessels

| | |
|---|---|
| accessible to the Charterers or their agents. | 129 |
| (ii) The Master shall sign cargo documents as and in the form presented, the | 130 |
| same, however, not to be Bills of Lading, but receipts which shall be non- | 131 |
| negotiable documents and shall be marked as such. The Charterers shall | 132 |
| indemnify the Owners against all consequences and liabilities arising from | 133 |
| the Master, Officers or agents signing, under the direction of the Charterers, | 134 |
| those cargo documents or other documents inconsistent with this Charter | 135 |
| Party or from any irregularity in the papers supplied by the Charterers or their | 136 |
| agents. | 137 |
| (b) The Vessel's Crew if required by Charterers will connect and disconnect | 138 |
| electric cables, fuel, water and pneumatic hoses when placed on board the | 139 |
| Vessel in port as well as alongside the offshore units; will operate the | 140 |
| machinery on board the Vessel for loading and unloading cargoes; and will | 141 |
| hook and unhook cargo on board the Vessel when loading or discharging | 142 |
| alongside offshore units. If the port regulations or the seamen and/or labour | 143 |
| unions do not permit the Crew of the Vessel to carry out any of this work, then | 144 |
| the Charterers shall make, at their own expense, whatever other | 145 |
| arrangements may be necessary, always under the direction of the Master. | 146 |
| (c) If the Charterers have reason to be dissatisfied with the conduct of the | 147 |
| Master or any Officer or member of the Crew, the Owners on receiving | 148 |
| particulars of the complaint shall promptly investigate the matter and if the | 149 |
| complaint proves to be well founded, the Owners shall as soon as reasonably | 150 |
| possible make appropriate changes in the appointment. | 151 |
| (d) The entire operation, navigation, and management of the Vessel shall be in | 152 |
| the exclusive control and command of the Owners, their Master, Officers and | 153 |
| Crew. The Vessel will be operated and the services hereunder will be | 154 |
| rendered as requested by the Charterers, subject always to the exclusive | 155 |
| right of the Owners or the Master of the Vessel to determine whether operation | 156 |
| of the Vessel may be safely undertaken. In the performance of the Charter | 157 |
| Party, the Owners are deemed to be an independent contractor, the | 158 |
| Charterers being concerned only with the results of the services performed. | 159 |

7. ~~Owners~~ Charterers to Provide — 160
(a) The ~~Owners~~ Charterers shall provide and pay for all provisions, ~~wages and~~ 161
all other
expenses of the Master, Officers and Crew; all maintenance and repair of the 162
Vessel's hull, machinery and equipment as specified in ANNEX "A"; also, 163
except as otherwise provided in this Charter Party, for all insurance on the 164
Vessel, all dues and charges directly related to the Vessel's flag and/or 165
registration, all deck, cabin and engineroom stores, cordage required for 166
ordinary ship's purposes mooring alongside in harbour, and all fumigation 167
expenses and de-ratisation certificates. The ~~Owners'~~ Charterers' obligations 168
under this
Clause extend to cover all liabilities for consular charges appertaining to the 169
Master, Officers and Crew, customs or import duties arising at any time during 170
the performance of this Charter Party in relation to the personal effects of the 171
Master, Officers and Crew, and in relation to the stores, provisions and other 172
matters as aforesaid which the ~~Owners~~ Charterers are to provide and/or pay 173
for. ~~and the~~
~~Owners shall refund to the Charterers any sums they or their agents may have~~ 174
~~paid or been compelled to pay in respect of such liability.~~ 175
(b) On delivery the Vessel ~~shall be~~ equipped, if appropriate, and the 176
Charterers ~~haves~~ accepted the vessel ~~at the Owners'~~
~~expense~~ with any towing and anchor handling equipment ~~specified in Section~~ 177
~~5(b) of ANNEX "A"~~ on board. If during the Charter Period any such equipment 178
becomes
lost, damaged or unserviceable, other than as a result of the Owners' 179
negligence, the Charterers shall either provide, or direct the Owners to 180
provide, an equivalent replacement at the Charterers' expense. 181

8. ~~Charterers also to Provide~~ 182
(a) While the Vessel is on hire the Charterers shall provide and pay for all fuel, 183
lubricants, water, dispersants, firefighting foam and transport thereof, port 184
charges, pilotage and boatmen and canal steersmen (whether compulsory or 185
not), launch hire (unless incurred in connection with the Owners' business), 186
light dues, tug assistance, canal, dock, harbour, tonnage and other dues and 187
charges, agencies and commissions incurred on the Charterers' business, 188
costs for security or other watchmen, and of quarantine (if occasioned by the 189
nature of the cargo carried or the ports visited whilst employed under this 190
Charter Party but not otherwise). 191
(b) At all times the Charterers shall provide and pay for the loading and 192
unloading of cargoes so far as not done by the Vessel's crew, cleaning of 193
cargo tanks, all necessary dunnage, uprights and shoring equipment for 194
securing deck cargo, all cordage except as to be provided by the Owners, all 195
ropes, slings and special runners (including bulk cargo discharge hoses) 196
actually used for loading and discharging, inert gas required for the 197
protection of cargo, and electrodes used for offshore works, and shall 198
reimburse the Owners for the actual cost of replacement of special mooring 199
lines to offshore units, wires, nylon spring lines etc. used for offshore works, 200
all hose connections and adaptors, and further, shall refill oxygen/acetylene 201
bottles used for offshore works. 202
(c) The Charterers shall pay for customs duties, all permits, import duties 203
(including costs involved in establishing temporary or permanent importation 204
bonds), and clearance expenses, both for the Vessel and/or equipment, 205
required for or arising out of this Charter Party. 206

9. Bunkers 207
~~Unless otherwise agreed,~~ Tthe Vessel shall be delivered with bunkers and 208
lubricants as on board and redelivered with sufficient bunkers to reach the 209
next bunkering stage en route to her next port of call. ~~The Charterers upon~~ 210
~~delivery and the~~ The Owners upon redelivery shall take over and pay for the 211
bunkers and lubricants on board at the prices prevailing at the times and 212
ports of delivery and redelivery ~~Charterers' cost of the bunkers and~~ 213
~~lubricants.~~

10. Hire and Payments 214
(a) *Hire*. - The Charterers shall pay Hire for the Vessel at the rate stated in Box 215
19 per day or pro rata for part thereof from the time that the Vessel is delivered 216
to the Charterers until the expiration or earlier termination of this Charter 217
Party. 218
(b) *Extension Hire*. - If the option to extend the Charter Period under Clause 219
1(b) is exercised, Hire for such extension shall, unless stated in Box 20, be 220
mutually agreed between the Owners and the Charterers. 221
(c) *Adjustment of Hire*. - The rate of hire shall be adjusted to reflect 222
documented changes, after the date of entering into the Charter Party or the 223
date of commencement of employment, whichever is earlier, in the Owners' 224
costs arising from changes in the Charterers' requirements or regulations 225
governing the Vessel and/or its Crew or this Charter Party. 226
(d) *Invoicing*. - All invoices shall be issued in the contract currency stated in 227
Box 19. In respect of reimbursable expenses incurred in currencies other 228
than the contract currency, the rate of exchange into the contract currency 229
shall be that quoted by the Central Bank of the country of such other currency 230
as at the date of the Owners' invoice. Invoices covering Hire and any other 231
payments due shall be issued monthly as stated in Box 21(i) or at the 232
expiration or earlier termination of this Charter Party. Notwithstanding the 233
foregoing, bunkers and lubricants on board at delivery shall be invoiced at 234
the time of delivery. 235
(e) *Payments*. - Payments of Hire, bunker invoices and disbursements for the 236
Charterers' account shall be received within the number of days stated in Box 237
23 from the date of receipt of the invoice. Payment shall be made in the 238
contract currency in full without discount to the account stated in Box 22. 239
~~However any advances for disbursements made on behalf of and approved by~~ 240
~~the Owners may be deducted from Hire due.~~ 241
If payment is not received by the Owners within 5 banking days following the 242
due date the Owners are entitled to charge interest at the rate stated in Box 24 243
on the amount outstanding from and including the due date until payment is 244
received. 245
Where an invoice is disputed, the Charterers shall in any event pay the 246
undisputed portion of the invoice but shall be entitled to withhold payment of 247
the disputed portion provided that such portion is reasonably disputed and 248
the Charterers specify such reason. Interest will be chargeable at the rate 249
stated in Box 24 on such disputed amounts where resolved in favour of the 250
Owners. Should the Owners prove the validity of the disputed portion of the 251
invoice, balance payment shall be received by the Owners within 5 banking 252
days after the dispute is resolved. Should the Charterers' claim be valid, a 253
corrected invoice shall be issued by the Owners. 254
In default of payment as herein specified, the Owners may require the 255
Charterers to make payment of the amount due within 5 banking days of 256
receipt of notification from the Owners; failing which the Owners shall have 257
the right to withdraw the Vessel without prejudice to any claim the Owners 258
may have against the Charterers under this Charter Party. 259
While payment remains due the Owners shall be entitled to suspend the 260
performance of any and all of their obligations hereunder and shall have no 261
responsibility whatsoever for any consequences thereof, in respect of which 262
the Charterers hereby indemnify the Owners, and Hire shall continue to 263
accrue and any extra expenses resulting from such suspension shall be for 264
the Charterers' account. 265
(f) *Audit*. - The Charterers shall have the right to appoint an independent 266
chartered accountant to audit the Owners' books directly related to work 267

This document is a computer generated SUPPLYTIME 89 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

## PART II
### "SUPPLYTIME 89" Uniform Time Charter Party for Offshore Service Vessels

performed under this Charter Party at any time after the conclusion of the 268
Charter Party, up to the expiry of the period stated in Box 25, to determine the 269
validity of the Owners' charges hereunder. The Owners undertake to make 270
their records available for such purposes at their principal place of business 271
during normal working hours. Any discrepancies discovered in payments 272
made shall be promptly resolved by invoice or credit as appropriate. 273

**11. Suspension of Hire** 274
The hire is payable on a 365 days basis without off-hire. ~~(a) If as a result of~~ 275
~~any deficiency of Crew or of the Owners' stores, strike of~~
~~Master, Officers and Crew, breakdown of machinery, damage to hull or other~~ 276
~~accidents to the Vessel, the Vessel is prevented from working, no Hire shall be~~ 277
~~payable in respect of any time lost and any Hire paid in advance shall be~~ 278
~~adjusted accordingly provided always however that Hire shall not cease in the~~ 279
~~event of the Vessel being prevented from working as aforesaid as a result of:~~ 280
~~(i) the carriage of cargo as noted in Clause 5(c)(iii) and (iv);~~ 281
~~(ii) quarantine or risk of quarantine unless caused by the Master, Officers or~~ 282
~~Crew having communication with the shore at any infected area not in~~ 283
~~connection with the employment of the Vessel without the consent or the~~ 284
~~instructions of the Charterers;~~ 285
~~(iii) deviation from her Charter Party duties or exposure to abnormal risks at~~ 286
~~the request of the Charterers;~~ 287
~~(iv) detention in consequence of being driven into port or to anchorage~~ 288
~~through stress of weather or trading to shallow harbours or to river or~~ 289
~~ports with bars or suffering an accident to her cargo, when the expenses~~ 290
~~resulting from such detention shall be for the Charterers' account~~ 291
~~howsoever incurred;~~ 292
~~(v) detention or damage by ice;~~ 293
~~(vi) any act or omission of the Charterers, their servants or agents.~~ 294
~~(b) Liability for Vessel not Working. - The Owners' liability for any loss,~~ 295
~~damage or delay sustained by the Charterers as a result of the Vessel being~~ 296
~~prevented from working by any cause whatsoever shall be limited to~~ 297
~~suspension of hire.~~ 298
~~(c) Maintenance and Drydocking. - Notwithstanding sub-clause (a) hereof, the~~ 299
~~Charterers shall grant the Owners a maximum of 24 hours on hire, which shall~~ 300
~~be cumulative, per month or pro rata for part of a month from the~~ 301
~~commencement of the Charter Period for maintenance and repairs including~~ 302
~~drydocking (hereinafter referred to as "maintenance allowance").~~ 303
~~The Vessel shall be drydocked at regular intervals. The Charterers shall place~~ 304
~~the Vessel at the Owners' disposal clean of cargo, at a port (to be nominated~~ 305
~~by the Owners at a later date) having facilities suitable for the Owners for the~~ 306
~~purpose of such drydocking.~~ 307
~~During reasonable voyage time taken in transits between such port and Area~~ 308
~~of Operation the Vessel shall be on hire and such time shall not be counted~~ 309
~~against the accumulated maintenance allowance.~~ 310
~~Hire shall be suspended during any time taken in maintenance repairs and~~ 311
~~drydocking in excess of the accumulated maintenance allowance.~~ 312
~~In the event of less time being taken by the Owners for repairs and drydocking~~ 313
~~or, alternatively, the Charterers not making the Vessel available for all or part~~ 314
~~of this time, the Charterers shall, upon expiration or earlier termination of the~~ 315
~~Charter Party, pay the equivalent of the daily rate of Hire then prevailing in~~ 316
~~addition to Hire otherwise due under this Charter Party in respect of all such~~ 317
~~time not so taken or made available.~~ 318
~~Upon commencement of the Charter Period, the Owners agree to furnish the~~ 319
~~Charterers with the Owners' proposed drydocking schedule and the~~ 320
~~Charterers agree to make every reasonable effort to assist the Owners in~~ 321
~~adhering to such predetermined drydocking schedule for the Vessel.~~ 322

**12. Liabilities and Indemnities** 323
(a) *Owners*. - Notwithstanding anything else contained in this Charter Party 324
excepting Clauses 5(c)(iii), 7(b), 8(b), 12(g), 15(c) and 21, the Charterers shall 325
not be responsible for loss of or damage to the property of the Owners or of 326
their contractors and sub-contractors, including the Vessel, or for personal 327
injury or death of the employees of the Owners or of their contractors and 328
sub-contractors, arising out of or in any way connected with the performance 329
of this Charter Party, even if such loss, damage, injury or death is caused 330
wholly or partially by the act, neglect, or default of the Charterers, their 331
employees, contractors or sub-contractors, and even if such loss, damage, 332
injury or death is caused wholly or partially by unseaworthiness of any vessel; 333
and the Owners shall indemnify, protect, defend and hold harmless the 334
Charterers from any and against all claims, costs, expenses, actions, 335
proceedings, suits, demands and liabilities whatsoever arising out of or in 336
connection with such loss, damage, personal injury or death. 337
(b) *Charterers*. - Notwithstanding anything else contained in this Charter 338

Party excepting Clause 21, the Owners shall not be responsible for loss of, 339
damage to, or any liability arising out of anything towed by the Vessel, any 340
cargo laden upon or carried by the Vessel or her tow, the property of the 341
Charterers or of their contractors and sub-contractors, including their 342
offshore units, or for personal injury or death of the employees of the 343
Charterers or of their contractors and sub-contractors (other than the Owners 344
and their contractors and sub-contractors) or of anyone on board anything 345
towed by the Vessel, arising out of or in any way connected with the 346
performance of this Charter Party, even if such loss, damage, liability, injury 347
or death is caused wholly or partially by the act, neglect or default of the 348
Owners, their employees, contractors or sub-contractors, and even if such 349
loss, damage, liability, injury or death is caused wholly or partially by the 350
unseaworthiness of any vessel; and the Charterers shall indemnify, protect, 351
defend and hold harmless the Owners from any and against all claims, costs, 352
expenses, actions, proceedings, suits, demands, and liabilities whatsoever 353
arising out of or in connection with such loss, damage, liability, personal 354
injury or death. 355
(c) *Consequential Damages*. -Neither party shall be liable to the other for, and 356
each party hereby agrees to protect, defend and indemnify the other against, 357
any consequential damages whatsoever arising out of or in connection with 358
the performance or non-performance of this Charter Party, including, but not 359
limited to, loss of use, loss of profits, shut-in or loss of production and cost of 360
insurance. 361
(d) *Limitations*. - Nothing contained in this Charter Party shall be construed or 362
held to deprive the Owners or the Charterers, as against any person or party, 363
including as against each other, of any right to claim limitation of liability 364
provided by any applicable law, statute or convention, save that nothing in 365
this Charter Party shall create any right to limit liability. Where the Owners or 366
the Charterers may seek an indemnity under the provisions of this Charter 367
Party or against each other in respect of a claim brought by a third party, the 368
Owners or the Charterers shall seek to limit their liability against such third 369
party. 370
(e) *Himalaya Clause*. - (i) All exceptions, exemptions, defences, immunities, 371
limitations of liability, indemnities, privileges and conditions granted or 372
provided by this Charter Party or by any applicable statute, rule or regulation 373
for the benefit of the Charterers shall also apply to and be for the benefit of the 374
Charterers' parent, affiliated, related and subsidiary companies; the 375
Charterers' contractors, sub-contractors, clients, joint venturers and joint 376
interest owners (always with respect to the job or project on which the Vessel 377
is employed); their respective employees and their respective underwriters. 378
(ii) All exceptions, exemptions, defences, immunities, limitations of liability, 379
indemnities, privileges and conditions granted or provided by this Charter 380
Party or by any applicable statute, rule or regulation for the benefit of the 381
Owners shall also apply to and be for the benefit of the Owners' parent, 382
affiliated, related and subsidiary companies, the Owners' sub-contractors, 383
the Vessel, its Master, Officers and Crew, its registered owner, its operator, its 384
demise charterer(s), their respective employees and their respective 385
underwriters. 386

(iii) The Owners or the Charterers shall be deemed to be acting as agent or 387
trustee of and for the benefit of all such persons and parties set forth above, 388
but only for the limited purpose of contracting for the extension of such 389
benefits to such persons and parties. 390
(f) *Mutual Waiver of Recourse (Optional, only applicable if stated in Box 28, but* 391
*regardless of whether this option is exercised the other provisions of Clause 12* 392
*shall apply and shall be paramount)* 393
In order to avoid disputes regarding liability for personal injury or death of 394
employees or for loss of or damage to property, the Owners and the 395
Charterers have entered into, or by this Charter Party agree to enter into, an 396
Agreement for Mutual Indemnity and Waiver of Recourse (in a form 397
substantially similar to that specified in ANNEX "C") between the Owners, the 398
Charterers and the various contractors and sub-contractors of the Charterers. 399
(g) *Hazardous and Noxious Substances*. - Notwithstanding any other 400
provision of this Charter Party to the contrary, the Charterers shall always be 401
responsible for any losses, damages or liabilities suffered by the Owners, 402
their employees, contractors or sub-contractors, by the Charterers, or by 403
third parties, with respect to the Vessel or other property, personal injury or 404
death, pollution or otherwise, which losses, damages or liabilities are caused, 405
directly or indirectly, as a result of the Vessel's carriage of any hazardous and 406
noxious substances in whatever form as ordered by the Charterers, and the 407
Charterers shall defend, indemnify the Owners and hold the Owners harmless 408

This document is a computer generated SUPPLYTIME 89 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

## PART II
### "SUPPLYTIME 89" Uniform Time Charter Party for Offshore Service Vessels

for any expense, loss or liability whatsoever or howsoever arising with 409
respect to the carriage of hazardous or noxious substances. 410

**13. Pollution** 411
(a) Except as otherwise provided for in Clause 15(c)(iii), the ~~Owners~~ Charterers 412
shall be
liable for, and agree to indemnify, defend and hold harmless the 413
~~Charterers~~Owners
against, all claims, costs, expenses, actions, proceedings, suits, demands 414
and liabilities whatsoever arising out of actual or potential pollution damage 415
and the cost of cleanup or control thereof arising from acts or omissions of 416
the Owners or their personnel which cause or allow discharge, spills or leaks 417
from the Vessel, except as may emanate from cargo thereon or therein. 418
(b) The Charterers shall be liable for and agree to indemnify, defend and hold 419
harmless the Owners from all claims, costs, expenses, actions, proceedings, 420
suits, demands, liabilities, loss or damage whatsoever arising out of or 421
resulting from any other actual or potential pollution damage, even where 422
caused wholly or partially by the act, neglect or default of the Owners, their 423
employees, contractors or sub-contractors or by the unseaworthiness of the 424
Vessel. 425

**14. Insurance** 426
(a)(i) The ~~Owners~~ Charterers shall procure and maintain in effect for the 427
duration of this
Charter Party, with reputable insurers, with total insurance value of USD 5 428
mill with the insurances set forth in ANNEX "B".
Policy limits shall not be less than those indicated. Reasonable deductibles 429
are acceptable and shall be for the account of the ~~Owners~~Charterers. 430
(ii) The ~~Charterers~~ Owners shall upon request be named as co-insured 431
together with the Charterers. ~~The Owners~~
~~shall upon request cause insurers to waive subrogation rights against the~~ 432
~~Charterers (as encompassed in Clause 12(e)(i)). Co-insurance and/or~~ 433
~~waivers of subrogation shall be given only insofar as these relate to liabilities~~ 434
~~which are properly the responsibility of the Owners under the terms of this~~ 435
~~Charter Party.~~ 436
(b) The ~~Owners~~ Charterers shall upon request furnish the ~~Charterers~~ Owners 437
with certificates of
insurance which provide sufficient information to verify that the ~~Owners~~ 438
Charterers have
complied with the insurance requirements of this Charter Party. 439
(c) If the ~~Owners~~ Charterers fail to comply with the aforesaid insurance 440
requirements, the
~~Charterers~~ Owners may, without prejudice to any other rights or remedies 441
under this
Charter Party, purchase similar coverage and invoice an amount of the 442
insurance costs as additional hire ~~deduct the cost thereof from~~
~~any payment due to the Owners~~ under this Charter Party. 443

**15. Saving of Life and Salvage** 444
(a) The Vessel shall be permitted to deviate for the purpose of saving life at 445
sea without prior approval of or notice to the Charterers and without loss of 446
Hire provided however that notice of such deviation is given as soon as 447
possible. 448
(b) Subject to the Charterers' consent, which shall not be unreasonably 449
withheld, the Vessel shall be at liberty to undertake attempts at salvage, it 450
being understood that the Vessel shall be off hire from the time she leaves 451
port or commences to deviate and she shall remain off-hire until she is again 452
in every way ready to resume the Charterers' service at a position which is not 453
less favourable to the Charterers than the position at the time of leaving port 454
or deviating for the salvage services. 455
All salvage monies earned by the Vessel shall be divided equally between the 456
Owners and the Charterers, after deducting the Master's, Officers' and Crew's 457
share, legal expenses, value of fuel and lubricants consumed, Hire of the 458
Vessel lost by the Owners during the salvage, repairs to damage sustained, if 459
any, and any other extraordinary loss or expense sustained as a result of the 460
salvage. 461
The Charterers shall be bound by all measures taken by the Owners in order 462
to secure payment of salvage and to fix its amount. 463
(c) The Owners shall waive their right to claim any award for salvage 464
performed on property owned by or contracted to the Charterers, always 465
provided such property was the object of the operation the Vessel was 466
chartered for, and the Vessel shall remain on hire when rendering salvage 467
services to such property. This waiver is without prejudice to any right the 468
Vessel's Master, Officers and Crew may have under any title. 469

If the Owners render assistance to such property in distress on the basis of 470
"no claim for salvage", then, notwithstanding any other provisions contained 471
in this Charter Party and even in the event of neglect or default of the Owners, 472
Master, Officers or Crew: 473
(i) The Charterers shall be responsible for and shall indemnify the Owners 474
against payments made, under any legal rights, to the Master, Officers 475
and Crew in relation to such assistance. 476
(ii) The Charterers shall be responsible for and shall reimburse the Owners 477
for any loss or damage sustained by the Vessel or her equipment by 478
reason of giving such assistance and shall also pay the Owners' 479
additional expenses thereby incurred. 480
(iii) The Charterers shall be responsible for any actual or potential spill, 481
seepage and/or emission of any pollutant howsoever caused occurring 482
within the offshore site and any pollution resulting therefrom 483
wheresoever it may occur and including but not limited to the cost of 484
such measures as are reasonably necessary to prevent or mitigate 485
pollution damage, and the Charterers shall indemnify the Owners 486
against any liability, cost or expense arising by reason of such actual or 487
potential spill, seepage and/or emission. 488
(iv) The Vessel shall not be off-hire as a consequence of giving such 489
assistance, or effecting repairs under sub-paragraph (ii) of this sub- 490
clause, and time taken for such repairs shall not count against time 491
granted under Clause 11(c). 492
(v) The Charterers shall indemnify the Owners against any liability, cost 493
and/or expense whatsoever in respect of any loss of life, injury, damage 494
or other loss to person or property howsoever arising from such 495
assistance. 496

**16. Lien** 497
~~The Owners shall have a lien upon all cargoes for all claims against the~~ 498
~~Charterers under this Charter Party and the Charterers shall have a lien on the~~ 499
~~Vessel for all monies paid in advance and not earned.~~ The Charterers will not 500
suffer, nor permit to be continued, any lien or encumbrance incurred by them 501
or their agents, which might have priority over the title and interest of the 502
Owners in the Vessel. Except as provided in Clause 12, the Charterers shall 503
indemnify and hold the Owners harmless against any lien of whatsoever 504
nature arising upon the Vessel during the Charter Period while she is under 505
the control of the Charterers, and against any claims against the Owners 506
arising out of the operation of the Vessel by the Charterers or out of any 507
neglect of the Charterers in relation to the Vessel or the operation thereof. 508
Should the Vessel be arrested by reason of claims or liens arising out of her 509
operation hereunder, unless brought about by the act or neglect of the 510
Owners, the Charterers shall at their own expense take all reasonable steps to 511
secure that within a reasonable time the Vessel is released and at their own 512
expense put up bail to secure release of the Vessel. 513

**17. Sublet and Assignment** 514
~~(a) Charterers. - The Charterers shall have the option of subletting, assigning~~ 515
~~or loaning the Vessel to any person or company not competing with the~~ 516
~~Owners, subject to the Owners' prior approval which shall not be~~ 517
~~unreasonably withheld, upon giving notice in writing to the Owners, but the~~ 518
~~original Charterers shall always remain responsible to the Owners for due~~ 519
~~performance of the Charter Party and contractors of the person or company~~ 520
~~taking such subletting, assigning or loan shall be deemed contractors of the~~ 521
~~Charterers for all the purposes of this Charter Party. The Owners make it a~~ 522
~~condition of such consent that additional Hire shall be paid as agreed~~ 523
~~between the Charterers and the Owners having regard to the nature and~~ 524
~~period of any intended service of the Vessel.~~ 525
~~(b) If the Vessel is sublet, assigned or loaned to undertake rig anchor~~ 526
~~handling and/or towing operations connected with equipment, other than that~~ 527
~~used by the Charterers, then a daily increment to the Hire in the amount as~~ 528
~~stated in Box 29 or pro rata shall be paid for the period between departure for~~ 529
~~such operations and return to her normal duties for the Charterers.~~ 530
~~(c) Owners. - The Owners may not assign or transfer any part of this Charter~~ 531
~~Party without the written approval of the Charterers, which approval shall not~~ 532
~~be unreasonably withheld.~~ 533
~~Approval by the Charterers of such subletting or assignment shall not relieve~~ 534
~~the Owners of their responsibility for due performance of the part of the~~ 535
~~services which is sublet or assigned.~~ 536

**18. Substitute Vessel** 537
~~The Owners shall be entitled at any time, whether before delivery or at any~~ 538
~~other time during the Charter Period, to provide a substitute vessel, subject to~~ 539

This document is a computer generated SUPPLYTIME 89 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.



## PART II
## "SUPPLYTIME 89" Uniform Time Charter Party for Offshore Service Vessels

the Charterers' prior approval which shall not be unreasonably withheld. 540

**19. War**  541
(a) Unless the consent of the Owners be first obtained, the Vessel shall not be 542 ordered nor continue to any port or place or on any voyage nor be used on 543 any service which will bring the Vessel within a zone which is dangerous as a 544 result of any actual or threatened act of war, war, hostilities, warlike 545 operations, acts of piracy or of hostility or malicious damage against this or 546 any other vessel or its cargo by any person, body or state whatsoever, 547 revolution, civil war, civil commotion or the operation of international law, nor 548 be exposed in any way to any risks or penalties whatsoever consequent upon 549 the imposition of sanctions, nor carry any goods that may in any way expose 550 her to any risks of seizure, capture, penalties or any other interference of any 551 kind whatsoever by the belligerent or fighting powers or parties or by any 552 government or rulers. 553
(b) Should the Vessel approach or be brought or ordered within such zone, or 554 be exposed in any way to the said risks, (i) the Owners shall be entitled from 555 time to time to insure their interest in the Vessel for such terms as they deem 556 fit up to its open market value and also in the Hire against any of the risks 557 likely to be involved thereby, and the Charterers shall make a refund on 558 demand of any additional premium thereby incurred, and (ii) notwithstanding 559 the terms of Clause 11 Hire shall be payable for all time lost including any loss 560 owing to loss of or injury to the Master, Officers, Crew or passengers or to 561 refusal by any of them to proceed to such zone or to be exposed to such risks. 562
(c) In the event of additional insurance premiums being incurred or the wages 563 of the Master and/or Officers and/or Crew and/or the cost of provisions and/ 564 or stores for deck and/or engine room being increased by reason of or during 565 the existence of any of the matters mentioned in sub-clause (a) the amount of 566 any additional premium and/or increase shall be added to the Hire, and paid 567 by the Charterers on production of the Owners' account therefor, such 568 account being rendered monthly. 569
(d) The Vessel shall have liberty to comply with any orders or directions as to 570 departure, arrival, routes, ports of call, stoppages, destination, delivery or in 571 any other way whatsoever given by the government of the nation under whose 572 flag the Vessel sails or any other government or any person (or body) acting 573 or purporting to act with the authority of such government or by any 574 committee or person having under the terms of the war risks insurance on the 575 Vessel the right to give any such orders or directions. 576
(e) In the event of the outbreak of war (whether there be a declaration of war or 577 not) between any of the countries stated in Box 30 or in the event of the nation 578 under whose flag the Vessel sails becoming involved in war (whether there be 579 a declaration of war or not) either the Owners or the Charterers may terminate 580 this Charter Party, whereupon the Charterers shall redeliver the Vessel to the 581 Owners in accordance with PART I if it has cargo on board after discharge 582 thereof at destination or, if debarred under this Clause from reaching or 583 entering it, at a near open and safe port or place as directed by the Owners, or 584 if the Vessel has no cargo on board, at the port or place at which it then is or if 585 at sea at a near, open and safe port or place as directed by the Owners. In all 586 cases Hire shall continue to be paid and, except as aforesaid, all other 587 provisions of this Charter Party shall apply until redelivery. 588
(f) If in compliance with the provisions of this Clause anything is done or is not 589 done, such shall not be deemed a deviation. 590
The Charterers shall procure that all Bills of Lading (if any) issued under this 591 Charter Party shall contain the stipulations contained in sub-clauses (a), (d) 592 and (f) of this Clause. 593

**20. Excluded Ports**  594
(a) The Vessel shall not be ordered to nor bound to enter without the Owners' 595 written permission (a) any place where fever or epidemics are prevalent or to 596 which the Master, Officers and Crew by law are not bound to follow the Vessel; 597 (b) any ice-bound place or any place where lights, lightships, marks and 598 buoys are or are likely to be withdrawn by reason of ice on the Vessel's arrival 599 or where there is risk that ordinarily the Vessel will not be able on account of 600 ice to reach the place or to get out after having completed her operations. The 601 Vessel shall not be obliged to force ice nor to follow an icebreaker. If, on 602 account of ice, the Master considers it dangerous to remain at the loading or 603 discharging place for fear of the Vessel being frozen in and/or damaged he 604 has liberty to sail to a convenient open place and await the Charterers' fresh 605 instructions. 606
(b) Should the Vessel approach or be brought or ordered within such place, 607 or be exposed in any way to the said risks, the Owners shall be entitled from 608 time to time to insure their interests in the Vessel and/or Hire against any of 609 the risks likely to be involved thereby on such terms as they shall think fit, the 610 Charterers to make a refund to the Owners of the premium on demand. 611

Notwithstanding the terms of Clause 11 Hire shall be paid for all time lost 612 including any lost owing to loss of or sickness or injury to the Master, Officers, 613 Crew or passengers or to the action of the Crew in refusing to proceed to such 614 place or to be exposed to such risks. 615

**21. General Average and New Jason Clause** 616
General Average shall be adjusted and settled in London unless otherwise 617 stated in Box 31, according to York/Antwerp Rules, 1974, as may be amended. 618 Hire shall not contribute to General Average. ~~Should adjustment be made in~~ 619 ~~accordance with the law and practice of the United States of America, the~~ 620 ~~following provision shall apply:~~ 621
~~"In the event of accident, danger, damage or disaster before or after the~~ 622 ~~commencement of the voyage, resulting from any cause whatsoever, whether~~ 623 ~~due to negligence or not, for which, or for the consequence of which, the~~ 624 ~~Owners are not responsible, by statute, contract or otherwise, the cargo,~~ 625 ~~shippers, consignees or owners of the cargo shall contribute with the Owners~~ 626 ~~in General Average to the payment of any sacrifices, loss or expenses of a~~ 627 ~~General Average nature that may be made or incurred and shall pay salvage~~ 628 ~~and special charges incurred in respect of the cargo.~~ 629
~~If a salving vessel is owned or operated by the Owners, salvage shall be paid~~ 630 ~~for as fully as if the said salving vessel or vessels belonged to strangers. Such~~ 631 ~~deposit as the Owners, or their agents, may deem sufficient to cover the~~ 632 ~~estimated contribution of the cargo and any salvage and special charges~~ 633 ~~thereon shall, if required, be made by the cargo, shippers, consignees~~ 634 ~~or owners of the cargo to the Owners before delivery".~~ 635

**22. Both-to-Blame Collision Clause** 636
If the Vessel comes into collision with another ship as a result of the 637 negligence of the other ship and any act, neglect or default of the Master, 638 mariner, pilot or the servants of the Owners in the navigation or the 639 management of the Vessel, the Charterers will indemnify the Owners against 640 all loss or liability to the other or non-carrying ship or her owners insofar as 641 such loss or liability represent loss of or damage to, or any claim whatsoever 642 of the owners of any goods carried under this Charter Party paid or payable by 643 the other or non-carrying ship or her owners to the owners of the said goods 644 and set-off, recouped or recovered by the other or non-carrying ship or her 645 owners as part of their claim against the Vessel or the Owners. The foregoing 646 provisions shall also apply where the owners, operators or those in charge of 647 any ship or ships or objects other than or in addition to the colliding ships or 648 objects are at fault in respect of a collision or contact. 649

**23. Structural Alterations and Additional Equipment** 650
The Charterers shall have the option of, at their expense, making structural 651 alterations to the Vessel or installing additional equipment with the written 652 consent of the Owners which shall not be unreasonably withheld but unless 653 otherwise agreed the Vessel is to be redelivered reinstated, at the Charterers' 654 expense, to her original condition. The Vessel is to remain on hire during any 655 period of these alterations or reinstatement. The Charterers, unless otherwise 656 agreed, shall be responsible for repair and maintenance of any such 657 alteration or additional equipment. 658

**24. Health and Safety** 659
The ~~Owners~~ Charterers shall comply with and adhere to all applicable 660 international, national and local regulations pertaining to health and safety, and such 661 ~~Charterers'~~ Owners' instructions as may be appended hereto. 662

**25. Taxes** 663
Each party shall pay taxes due on its own profit, income and personnel. The 664 Charterers shall pay all other taxes and dues arising out of the operation or 665 use of the Vessel during the Charter Period. 666
In the event of change in the Area of Operation or change in local regulation 667 and/or interpretation thereof, resulting in an unavoidable and documented 668 change of the Owners' tax liability after the date of entering into the Charter 669 Party or the date of commencement of employment, whichever is the earlier, 670 Hire shall be adjusted accordingly. 671

**26. Early Termination** 672
(a) *For Charterers' Convenience.* - The Charterers may terminate this Charter 673 Party at any time by giving the Owners written notice as stated in Box 15 and 674 by paying the settlement stated in Box 14 and the demobilisation charge 675 stated in Box 16, as well as Hire or other payments due under the Charter 676 Party. 677
(b) *For Cause.* - If either party becomes informed of the occurrence of any 678

This document is a computer generated SUPPLYTIME 89 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

## PART II
### "SUPPLYTIME 89" Uniform Time Charter Party for Offshore Service Vessels

event described in this Clause that party shall so notify the other party promptly in writing and in any case within 3 days after such information is received. If the occurrence has not ceased within 3 days after such notification has been given, this Charter Party may be terminated by either party, without prejudice to any other rights which either party may have, under any of the following circumstances:

(i) *Requisition.* – If the government of the state of registry and/or the flag of the Vessel, or any agency thereof, requisitions for hire or title or otherwise takes possession of the Vessel during the Charter Period.

(ii) *Confiscation.* – If any government, individual or group, whether or not purporting to act as a government or on behalf of any government, confiscates, requisitions, expropriates, seizes or otherwise takes possession of the Vessel during the Charter Period.

(iii) *Bankruptcy.* – In the event of an order being made or resolution passed for the winding up, dissolution, liquidation or bankruptcy of either party (otherwise than for the purpose of reconstruction or amalgamation) or if a receiver is appointed or if it suspends payment or ceases to carry on business.

(iv) *Loss of Vessel.* – If the Vessel is lost, actually or constructively, or missing, unless the Owners provide a substitute vessel pursuant to Clause 18. In the case of termination, Hire shall cease from the date the Vessel was lost or, in the event of a constructive total loss, from the date of the event giving rise to such loss. If the date of loss cannot be ascertained or the Vessel is missing, payment of Hire shall cease from the date the Vessel was last reported.

(v) *Breakdown.* – If, at any time during the term of this Charter Party, a breakdown of the Owners' equipment or Vessel results in the Owners' being unable to perform their obligations hereunder for a period exceeding that stated in Box 32, unless the Owners provide a substitute vessel pursuant to Clause 18.

(vi) *Force Majeure.* – If a force majeure condition as defined in Clause 27 prevails for a period exceeding 15 consecutive days.

(vii) *Default.* – If either party is in repudiatory breach of its obligations hereunder.

Termination as a result of any of the above mentioned causes shall not relieve The Charterers of any obligation for Hire and any other payments due.

### 27. Force Majeure
Neither the Owners nor the Charterers shall be liable for any loss, damages or delay or failure in performance hereunder resulting from any force majeure event, including but not limited to acts of God, fire, action of the elements, epidemics, war (declared or undeclared), warlike actions, insurrection, revolution or civil strife, piracy, civil war or hostile action, strikes or differences with workmen (except for disputes relating solely to the Owners' or the Charterers' employees), acts of the public enemy, federal or state laws, rules and regulations of any governmental authorities having or asserting jurisdiction in the premises or of any other group, organisation or informal association (whether or not formally recognised as a government), and any other cause beyond the reasonable control of either party which makes continuance of operations impossible.

### 28. Notices and Invoices
Notices and invoices required to be given under this Charter Party shall be given in writing to the addresses stated in Boxes 21, 35 and 36 as appropriate.

### 29. Wreck Removal
If the Vessel sinks and becomes a wreck and an obstruction to navigation and has to be removed upon request by any compulsory law or authority having jurisdiction over the area where the wreck is placed, the Owners shall be liable for any and all expenses in connection with the raising, removal, destruction, lighting or marking of the wreck.

### 30. Confidentiality
All information or data obtained by the Owners in the performance of this Charter Party is the property of the Charterers, is confidential and shall not be disclosed without the prior written consent of the Charterers. The Owners shall use their best efforts to ensure that the Owners, any of their sub-contractors, and employees and agents thereof shall not disclose any such information or data.

### 31. Law and Arbitration
*) (a) This Charter Party shall be governed by ~~English~~ Norwegian law and any dispute arising out of this Charter Party shall be referred to arbitration in London, one arbitrator being appointed by each party, in accordance with the Norwegian Arbitration Acts ~~1950 and 1979~~ or any statutory modification or re-enactment thereof for the time being in force. On the receipt by one party of the nomination in writing of the other party's arbitrator that party shall appoint their arbitrator within 14 days, failing which the arbitrator already appointed shall act as sole arbitrator. If two arbitrators properly appointed shall not agree they shall appoint an umpire whose decision shall be final.

*) (b) Should any dispute arise out of this Charter Party, the matter in dispute shall be referred to three persons at ~~New York~~ in Oslo, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this agreement may be made a rule of the Court. The arbitrators shall be members of the Society of Maritime Arbitrators, Inc. of New York and the proceedings shall be conducted in accordance with the rules of the Society.

*) (c) Any dispute arising out of this Charter Party shall be referred to arbitration at the place stated in Box 33 subject to the law and procedures applicable there.

(d) If Box 33 in PART I is not filled in, sub-clause (a) of this Clause shall apply.

*) (a), (b) and (c) are alternatives; state alternative agreed in Box 33

### 32. Entire Agreement
This is the entire agreement of the parties, which supersedes all previous written or oral understandings and which may not be modified except by a written amendment signed by both parties.

### 33. Severability Clause
If any portion of this Charter Party is held to be invalid or unenforceable for any reason by a court or governmental authority of competent jurisdiction, then such portion will be deemed to be stricken and the remainder of this Charter Party shall continue in full force and effect.

### 34. Demise
Nothing herein contained shall be construed as creating a demise of the Vessel to the Charterers.

### 35. Definitions
"Well" is defined for the purposes of this Charter Party as the time required to drill, test, complete and/or abandon a single borehole including any side-track thereof.

"Offshore unit" is defined for the purposes of this Charter Party as any vessel, offshore installation, structure and/or mobile unit used in offshore exploration, construction, pipelaying or repair, exploitation or production.

"Offshore site" is defined for the purposes of this Charter Party as the area within three nautical miles of an "offshore unit" from or to which the Owners are requested to take their Vessel by the Charterers.

"Employees" is defined for the purposes of this Charter Party as employees, directors, officers, servants, agents or invitees.

### 36. Headings
The headings of this Charter Party are for identification only and shall not be deemed to be part hereof or be taken into consideration in the interpretation or construction of this Charter Party.

This document is a computer generated SUPPLYTIME 89 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

## ADDITIONAL AGREEMENT
## TO
## SUPPLYTIME 89 DATED 12 MAY 2005
## "ALDOMA"

### 1. Profit split

In addition to the charter hire payable pursuant to box 19 the Owners and the Charterers have agreed a profit split of any average daily net earnings (inclusive of Part II clause 7 items) above the levels set out below in any 90 day period as follows:

From 6 March 2006-5 May 2007 above USD 9.000 per day  - split 50/50
From 6 May 2007-5 May 2008 above USD 9.500 per day  - split 50/50
From 6 May 2008-5 May 2009 above USD 10.000 per day  - split 50/50

By way of example if the net daily rate is USD 10,000 in the first period an additional USD 500 per day is payable to the Owners being 50% of the rate above USD 9,000.

Any additional hire payable pursuant to this additional clause shall be paid upon closing of books for the period, but not later than 10 banking days after the expiry of each 90 day period.

The Charterers will provide the Owners with monthly reports of earnings and will on request provide copies of sub-charterparties and freight invoices and other relevant documentation. The Owners shall be entitled to appoint an auditor to review the documents relevant to establish the earning.

### 2. Russian crew

The Owners may require that the Charterers employ Russian crew as provided by the Owners, provided the Owners provide crew with suitable experience and with necessary qualification to comply with any sub charter or other contractual commitment for the Vessel. The crew shall be employed on 4 months on 4 months off basis and Charterers shall pay the crew's replacement costs.

### 3. Bank Guarantee

Against cancellation of the security provided for the Charterers' obligations under the previous charter agreement between the parties for the Aldoma, the Charterers will provide the Owners with a bank guarantee in Owners' favour in an amount of NOK 150,000 as security for Charterers' obligations towards the Owners hereunder.

12 May 2005

FSUE Arktikmorneftegazrazvedka                NORTH OFFSHORE AS