BLANK ROME LLP
Attorneys for Defendant
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORTH OFFSHORE AS,<br><br>        Plaintiff,<br><br>- against -<br><br>ROLV BERG DRIVE AS,<br><br>        Defendant. | 07 CV 3095 (SHS) |

## MEMORANDUM OF LAW IN REPLY TO OPPOSITION TO SUPPLEMENTAL RULE E COUNTER-SECURITY

*BLANK ROME LLP*
*Attorneys for Defendant*
*Jeremy J.O. Harwood*
*405 Lexington Avenue*
*New York, NY 10174*
*(212) 885-5000*

128127.00601/6579367v.1

## PRELIMINARY STATEMENT

ROLV BERG AS ("RBD"), defendant, submits this memorandum in reply to the opposition of Plaintiff North Offshore AS ("Plaintiff" or "NOA") to the request for compulsory Supplemental Rule E counter-security in respect of a Side Letter agreement dated March 5, 2004 to a maritime charter (the "Side Letter").

## THE FACTS

NOA filed three verified complaints in 2007 as follows:

| Date | Principal Amount ($) | Interest/Attorney's Fees ($) |
|---|---|---|
| 4.17 | 483,682 | 48,368 |
| 5.27 | 270,000 | 75,000 |
|  | (crediting payment of $433,682) | 54,000 |
| 6.5 | 296,980 | 18,552 |
| CUMULATIVE TOTAL ($): | 1,000,662 | 195,920 |

Thus, the total sum sought to be attached by the Complaints is $1,196,900.

The Complaints each alleged disputes under a Charter dated February 16, 2004 (the "Charter"). The first complaint claimed the principal and interest awarded North by two Norwegian arbitration awards dated, respectively, September 1, 2006 and April 13, 2007 (the "First Award" and "Second Award," respectively).

The Second Complaint acknowledged payment of the awards in full since the filing of the First Complaint with the exception of $7,500 and $42,500 in respect of the First and Second Awards, respectively. It added a claim for "outstanding hire." The

1

Third complaint added an additional claim for "outstanding hire," in the amounts stated above.

## DISCUSSION

### POINT I

### AS WAS PLAINTIFF, RBD WAS ONLY REQUIRED TO PLEAD A PRIMA FACIE CLAIM IN ITS REQUEST FOR COUNTER-SECURITY

None of Plaintiff's complaints attached any documentation in support of their allegations. To the contrary, the verification of its counsel referenced his review of documentation and discussion with his client's representatives. RBD's counsel's verification likewise refers to "statements made by and documents received" from his client's representatives.

It is commonly accepted, as the Court is well aware, that numerous Rule B complaints are filed without exhibits or any other "evidence." Such verified allegations are sufficient to assert and make a prima facie claim, which is how Plaintiff obtained its three garnishment orders.

As stated by Judge Wood in Tide Line Inc. v. Eastrade Commodities Inc., et al., 2006 U.S. Dist. LEXIS 95870 * 15-16, 2006 AMC 252 (S.D.N.Y. August 15, 2006):

> For a plaintiff to show that "it has a valid prima facie admiralty claim against the defendant," id., 460 F.3d at 444-445, 2006 WL 2129336, at * 9, 2006 U.S. App. LEXIS 19302, at *28, in the context of maritime attachment, it appears that a plaintiff need not provide anything beyond its Verified Complaint, pursuant to Supplemental Rules B and E. A court relies only on a plaintiff's complaint to determine if the plaintiff has shown that it has such a claim against the defendant (and on a plaintiff's affidavit to determine whether it appears that the defendant cannot be found within the

2

district). See Fed. R. Civ. P. Supp. Rule B(1) ("The court must review the complaint and affidavit and, if the conditions of this <u>Rule B</u> appear to exist, enter an order so stating and authorizing process of attachment and garnishment."); see also <u>Aqua Stoli Shipping Ltd., 460 F.3d at 438, 2006 WL 2129336, at *3, 2006 U.S. App. LEXIS 19302, at *8-*9</u> . . . . Furthermore, Aqua Stoli implies that a plaintiff is likewise not required to provide evidence showing that it has a claim against defendant, to carry its burden under <u>Supplemental Rule E(4)(f)</u>. See <u>Aqua Stoli Shipping Ltd., 460 F.3d at 439, 2006 WL 2129336, at *4, 2006 U.S. App. LEXIS 19302, at *12</u> (holding that "once a plaintiff has carried his burden to show that his attachment satisfies the requirements of <u>Supplemental Rule B</u>, a district court may vacate an attachment only upon [certain] circumstances," which are very limited, as discussed above).

If Plaintiff was only required to plead a <u>prima facie</u> claim it cannot assert a different standard for RBD. Moreover, its attacks on the merits of that claim are of no merit. It is undisputed that the merits of disputes under the Charter and/or Side Letter are subject to "English-Norwegian Law." Likewise, NOA's counter-claim, if it is not a separate contract from the Charter, as discussed below, is subject to arbitration. <u>See</u>, Hoel Aff., Ex. 1, clause 31.

### A.   <u>The Hoel Affirmation</u>

NOA submits the affirmation of Svein Hoel dated October 1, 2007 ("Hoel Aff."). Mr. Hoel is not identified as a Norwegian lawyer nor is the Hoel Affirmation designated as a notice of foreign law under F. R. Civ. P. Rule 44.1

Mr. Hoel's comments on the M/V ALDOMA's inability to meet RBD's contractual partner's requirements, had Plaintiff not reneged on the renewal option, are entirely beside the point. <u>Id</u>., ¶ 8. As can be seen from the Side Letter (Hoel Aff. Ex. 2),

128127.00601/6579367v.1

the renewal option was in fact "triggered" by RBD obtaining an extension or new contract with the third-party, ONGC, as Mr. Hoel confirms was his understanding. Id., ¶ 8.

### B. The Mnatsakanyan Affirmation

The affirmation of Oleg Mnatsakanyan dated October 1, 2007 relating to his negotiations on behalf of his company as head owner with NOA as "disponent owner" are likewise immaterial to the claims that RBD asserts against NOA under the Side Letter. Those contentions might be raised by Plaintiff in its defense in the appropriate forum but are immaterial as to whether RBD has stated a "prima facie" claim.

### C. The Memorandum of Law

Plaintiff NOA's U.S. counsel does not profess to be versed or qualified in "English-Norwegian Law" applicable to the Charter. If, as he contends, the Side Letter "is a completely separate agreement" it is equally clear that the parties did not contract under U.S. law, federal or state.

NOA's counsel's assertion that RBD's Side Letter claim is "frivolous" because it "does not produce any contracts, any witness statements, or any other proof that such a claim has any basis in reality" (Id. at 17) is its counsel's view that more than a "prima facie" case must be established. The citation of cases from the district courts of Florida and Louisiana, given the plethora of Rule B/E decisions in this district, is unconvincing. Ythan Ltd. v. Americans Bulk Transport Ltd., 336 F. Supp.2d 305, 309 (S.D.N.Y. 2004) is plainly distinguishable: defendant Americas Bulk was not entitled to counter-security in the "highly contingent" event that cargo claimants would proceed against it for

4

precisely the fact that those cargo claimants had already obtained security for the same claim against the plaintiff, Ythan. See, Greenwich Marine Inc. v. S.S. "Alexandria", 339 F.2d 901, 905 (2d cir. 1965) (discussing indemnity contingencies).

## POINT II

### RBD'S ATTACHED FUNDS SHOULD BE RELEASED IF NOA DOES NOT PROVIDE SECURITY

It is firmly established that the purpose of Rule E(7) is to place the parties on an equal footing. See Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co., 263 U.S. 629, 638-39 (1924). Clearly, when one party posts security and the other fails to comply with a court order to do the same, that policy is violated.

This Court has not been reticent to exercise its authority to vacate a plaintiff's attachment if the plaintiff fails to comply with an order requiring it to provide security for a defendant's counterclaim. See Verton Navigation, Inc. v. Caribica Shipping Ltd., no. 90 Civ. 6940 (JFK), 1992 U. S. District LEXIS 517 (S.D.N.Y. January 21, 1992)

In Seaboard & Caribbean Transport Corp. v. Hafen-Dampfschiffahrt A.G. Hapag-Hadac Seebaderdienst, 329 F.2d 538 (5th Cir. 1964), a shipowner posted security in order to release its vessel which had been arrested by charterer. The owner thereafter sought counter-security. The Fifth Circuit held that it was within the trial court's broad discretion to release owner's security since charterer was financially unable to post counter-security.

In <u>Titan Navigation, Inc. v. Timsco, Inc.</u>, 808 F.2d 400 (5th Cir. 1987), the Fifth Circuit again released security when a party claiming financial inability failed to post counter-security. According to the Court:

> [T]he exercise of the trial court's discretion to order counter-security is to be guarded by the essential and equitable purposes of the Rule. In doing so, the Court must weigh the importance of the security interests giving rise to the initial seizure, against the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection . We believe the guidon for this analysis is the Court's obligation to preserve the integrity of maritime liens . . . We can readily contemplate instances when permitting one party to enjoy security without requiring counter-security could result in injustice. For example, <u>when no maritime lien or statutory right is involved, as in an action commenced quasi in rem under Rule B, there usually would be little or no reason to permit a complainant to enjoy unilateral security rights, absent strong justification -- or in the terms of Rule E(7), "cause shown."</u> (Underscoring added.)

808 F.2d 404-405.

In the present case, the security posted by RBD of $439,807 attached at ABN AMRO BANK N.V. should also be released as a matter of the Court's discretion if NOA fails to provide security. As stressed in <u>Titan Navigation</u>, the present action does not involve a maritime lien, but simply a maritime attachment pursuant to Rule B; the underlying disputes are subject to resolution in Norway. To permit NOA otherwise to require security from RBD without complying with the Court's order to post counter-security would be a severe injustice.

POINT III

**PLAINTIFF'S ALLEGED INABILITY TO POST ANY
COUNTER-SECURITY IS NOT A GROUNDS FOR
DENYING SUCH COUNTER-SECURITY BUT, TO THE
CONTRARY, FOR DISMISSING THE COMPLAINT**

Aqua Stoli, supra, made abundantly clear that a test of "necessity" cannot be used in this Circuit to vacate a valid Rule B attachment. If, as is clear, a Fortune 500 company cannot deny a Rule B plaintiff's right to the Rule B remedy because of its financial soundness it is equally clear that company trading on the brink on insolvency cannot adopt a similar "means" test. The same standard must apply a fortiori to Rule E.

POINT IV

**ACCEPTING PLAINTIFF'S CLAIM THAT RBD'S
COUNTER-CLAIM DOES NOT ARISE UNDER THE
CHARTER SHOULD ENTITLE RBD TO ITS OWN RULE B RELIEF**

Plaintiff argues that "RBD's purported counterclaim does not arise from the "same transaction or occurrence" as the claims of North Offshore" against RBD under the Charter. Memo at 12. Plaintiff's brief alleges that the side letter agreement[1] dated March 5, 2004 is a "completely separate agreement" from the Charter dated February 16, 2004 (the "Charter"). Accepting that position, RBD should be entitled to maintain its own and separate action for Rule B relief.

**CONCLUSION**

Defendant respectfully submits that it is entitled to counter-security up to the cumulative amount of the sums sought to be attached by Plaintiff of $1,196,900 and in

---

[1] Hoel Ex. 2.

the event such counter-security is not posted that its own attached funds should be released and/or in the alternative, it is entitled to maintain its own separate Rule B action, conceding to Plaintiff's argument that the Side Letter is a "separate contract" from the Charter.

Dated: New York, NY
      October 3, 2007

                              Respectfully submitted,

                              **BLANK ROME LLP**
                              Attorneys for Defendant
                              ROLV BERG DRIVE AS

                              By /s/ Jeremy Harwood
                              JEREMY J.O. HARWOOD (JH 9012)
                              405 Lexington Avenue
                              New York, NY 10174
                              Tel.:(212) 885-5000
                              Fax: (212) 885-5001

128127.00601/6579367v.1