UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NORTH OFFSHORE AS,                    :    07 Civ. 3095 (SHS)
                                      :
                Plaintiff,            :
                                      :
      -against-                      :    MEMORANDUM OPINION
                                      :
ROLV BERG DRIVE AS,                   :
                                      :
                Defendant.            :
------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      Defendant Rolv Berg Drive AS ("RBD") seeks countersecurity in the amount of $1.1 million from plaintiff North OffShore AS pursuant to Rule E(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims. That motion was denied after oral argument in an Order dated November 6, 2007. This Memorandum Opinion sets forth in fuller measure the reasoning behind that Order.

**I.    BACKGROUND**

      On February 16, 2004, North Offshore entered into a three-year charter party with RBD for the ALDOMA, a vessel owned by non-party Arktikmorneftgazrazvedka ("AMNGR"), a Russian company. Disputes arose in connection with the February 2004 charter party and North Offshore brought various claims against RBD in binding arbitration proceedings that were held in Norway. In September 2006 and April 2007, the arbitration panel made two separate awards in favor of North Offshore, and RBD has since paid the monies owed pursuant to those awards to North Offshore. However, North Offshore has asserted additional claims against RBD in the amount of approximately $800,000 that also arise out of the February 2004 charter party; North Offshore intends to arbitrate those claims in additional proceedings in Norway.

In connection with North Offshore's outstanding claims against RBD – as well as the portion of the arbitration awards which, at one point in the course of this litigation, had not yet been paid – North Offshore initiated an action in this Court seeking an Order of Attachment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. In April 2007, this Court authorized the attachment and garnishment of up to $532,051.08 of RBD's funds. In July 2007, the Court granted North Offshore's request to amend the Order of Attachment to authorize the attachment of up to $988,411.43 of RBD's funds. North Offshore attached approximately $400,000 of RBD's funds in September 2007.

Prior to the attachment of its funds, RBD filed an Answer and Counterclaim pursuant to Supplemental Rule E(7) in August 2007. In its counterclaim, RBD asserts that North Offshore breached a written "side agreement" dated March 5, 2004 between the two parties pursuant to which RBD had the option of extending the time charter for the ALDOMA. RBD contends that North Offshore rejected RBD's attempt in January 2007 to exercise that option, and RBD now seeks approximately $13 million in damages. North Offshore responds that a condition precedent to the exercise of RBD's option was the consent of AMNGR, the vessel's owner. Because AMNGR refused to provide that consent for various commercial reasons, North Offshore asserts that an extension of the time charter was not possible and that it therefore did not breach any side agreement with RBD.

## II.    DISCUSSION

RBD seeks $1.1 million in countersecurity pursuant to Supplemental Rule E(7). That provision provides in relevant part that:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise.

Supp. R. E(7)(a). Here, RBD asserts that it is entitled to Rule E(7) countersecurity because RBD has had approximately $400,000 of its funds attached as security for North Offshore's claims in the original action. RBD contends that because its counterclaim arises from the same "transaction or occurrence that is the subject of the original action," it is therefore entitled to security by right. Furthermore, RBD asserts that countersecurity should issue because its counterclaim satisfies the minimal pleading requirements for admiralty claims seeking security pursuant to Supplemental Rule B.

Indeed, the rule in the Second Circuit is that "an attachment should issue [pursuant to Rule B] if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006). Furthermore, there is no "broader equitable inquiry" and the party seeking security need not show that the "the attachment is necessary to obtain jurisdiction over a defendant or to secure a potential judgment." Id. at 446.

However, the Aqua Stoli standard for a Rule B attachment is not the standard that applies to motions for countersecurity brought pursuant to Rule E(7). In particular, the language of Rule E(7) directing that security be granted "unless the court for cause shown, directs otherwise" makes it entirely clear that "the trial court possesses broad discretion in deciding whether to order countersecurity." Result Shipping Co. v. Ferruzi Trading USA Inc., 56 F.3d 394, 399 (2d Cir. 1995). In exercising that discretion, courts consider several factors but "the core purpose of the countersecurity rule is to place the parties on an even footing; if one party is deprived of the use of its property during the litigation but the adverse party is not, despite the pendency of reciprocal claims, the party with the security may have unfair leverage in the action." Finecom

3

Shipping Ltd. v. Multi Trade Enters. AG, No. 05 Civ. 6695, 2005 U.S. Dist. LEXIS 25761, at *2 (S.D.N.Y. Oct. 24, 2005).  See also Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co., 263 U.S. 629, 638-39, 44 S. Ct. 220, 68 L. Ed. 480 (1924) (construing former Admiralty Rule 53).  Furthermore, the trial court must be

> guided by the essential and equitable purposes of the rule. In doing so, the court must weigh the importance of the security interest giving rise to the initial seizure, and the burden of posting countersecurity, against the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection.

Result Shipping, 56 F.3d at 400.  Nothing in the Second Circuit's decision in Aqua Stoli disturbs that approach or suggests that a motion for countersecurity pursuant to Rule E(7) need only meet the prima facie requirements of an admiralty claim brought pursuant to Rule B.  Rather, motions for countersecurity remain – even post-Aqua Stoli – subject to the "broad discretion" of the court.  See Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A., No. 06 Civ. 15299, 2007 U.S. Dist. LEXIS 18827, at *3 (S.D.N.Y. Feb. 27, 2007).

Accordingly, whether to grant or deny RBD's motion for countersecurity is an equitable determination within the broad discretion of this Court.  Several factors weigh in favor of denying that motion.

First, RBD has failed to submit any evidence whatsoever to counter the proposition that its counterclaim is entirely without merit.  By contrast, North Offshore has submitted affidavits from Svein Hoel, the Managing Director of North Offshore, and Oleg S. Mnatsakanyan, Director General of AMNGR.  Those affidavits support North Offshore's position that it was not possible to extend RBD's charter party because the condition precedent to that extension – the consent of AMNGR – was not fulfilled based on a commercial decision by AMNGR.  (See Affidavit of Svein Hoel dated Oct. 1, 2007 ¶¶ 5-9; Affidavit of Oleg S. Mnatsakanyan dated Oct. 1, 2007 ¶¶ 6-11.)  RBD has not submitted any evidence to contravene those accounts or to explain how – in

light of those facts – North Offshore could be deemed in breach of the March 2004 side agreement. "The premise that countersecurity will not be required on the basis of frivolous counterclaims is a sound one," Finecom Shipping, 2005 U.S. Dist. LEXIS 25761, at *3-4, and a court "should not require countersecurity where the counterclaim is frivolous or so lacking in merit that the court can only conclude that the counterclaim was advanced solely to secure a negotiating advantage over the complainant," Titan Navigation, Inc. v. Timsco, Inc., 808 F.2d 400, 404 (5th Cir. 1987). Mindful that the "ability to understand the merits of a dispute at an early stage is limited," Finecom Shipping, 2005 U.S. Dist. LEXIS 25761, at *4, the Court nonetheless finds that RBD's counterclaim is highly speculative – relating to its alleged lost profits from the failure to obtain continued use of the ALDOMA – and RBD has provided no rebuttal to North Offshore's position that the claim is without merit. Those deficiencies weigh against directing North Offshore to post countersecurity. See Ythan Ltd. v. Americas Bulk Transport Ltd., 336 F. Supp. 305, 309 (S.D.N.Y. 2004) (rejecting motion for countersecurity where the counterclaim was "highly contingent"); U.S. Maritime Services, Inc. v. Trade Ventures, Inc., No. 98-0499 Section "C", 1998 U.S. Dist. LEXIS 10608, at *6 (E.D. La. July 8, 1998) (denying countersecurity because defendants' counterclaim was too speculative – "[u]nlike plaintiff's claim which is based on past events reasonably due to be ascertained and quantified, defendants' losses due to a 'road not taken' cannot be so readily ascertained and quantified").

Second, North Offshore has submitted affidavit testimony and a financial statement in support of the proposition that it would be exceedingly burdensome for North Offshore – a small company with limited resources – to post the requested countersecurity. In fact, such an order would compel North Offshore to release the funds that it has already attached to secure its own claims against RBD. (See Hoel Aff. ¶¶ 15-16, 24.) Furthermore, North Offshore contends that a

significant reason for its lack of liquidity arises from the fact that it has made payments to AMNGR for the charter hire of the ALDOMA, but has not yet itself been paid by RBD for its use of the vessel. These facts suggest that granting RBD's motion for countersecurity would not result in putting the parties on the "equal footing" that Rule E(7) seeks to promote, but would rather serve to thwart the purpose of North Offshore's Rule B attachment. Rule E(7) "is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit," Result Shipping, 56 F.3d at 400, or, on that same logic, from maintaining an action. Accordingly, North Offshore's financial circumstances – and RBD's role in North Offshore's difficult financial position – provide additional good cause to deny RBD's motion for countersecurity.

Finally, the parties dispute whether RBD's counterclaim even arises from the same "transaction or occurrence that is the subject of the original action," which triggers a counterclaimant's right to countersecurity pursuant to Rule E(7). See Sea-Terminals, Inc. v. Independent Container Lines, Ltd., No. 89 Civ. 6931, 1990 U.S. Dist. LEXIS 11561, at *5 (S.D.N.Y. Sept. 4, 1990) ("Supplemental Rule E(7) is identical to Fed. R. Civ. P. 13(a), which permits counter-security only for compulsory counterclaims."). North Offshore contends that the February 2004 charter party and the March 2004 side agreement constitute entirely separate transactions, that RBD's counterclaim cannot be considered a "compulsory" or "mandatory" counterclaim, and that RBD cannot therefore rely on Rule E(7). Indeed, the limited evidence before the Court at this stage suggests that RBD's counterclaim – for the breach of a purported charter extension – and North Offshore's claim in the original action – involving non-payment of hire for use of the ALDOMA and expenses associated with RBD's failure to redeliver the vessel within the agreed redelivery range – raise entirely separate issues of fact and law and may not necessarily be "so logically connected that considerations of judicial economy and fairness

dictate that all the issues be resolved in one lawsuit." Klein v. London Star, 26 F. Supp. 2d 689, 697 (S.D.N.Y. 1998). That would suggest that RBD's counterclaim is not a mandatory counterclaim entitled to countersecurity. Nonetheless, the Court need not reach a determination on that point given the significant other grounds on which to deny RBD's motion.

### III. CONCLUSION

In sum, Supplemental Rule E(7) – not Supplemental Rule B – provides the basis for RBD's countersecurity motion, and whether to grant countersecurity pursuant to Rule E(7) falls firmly within the discretion of this Court. Here, at least two factors weigh against directing that North Offshore post countersecurity: first, RBD's counterclaim – based on the parties' submissions to the Court – appears frivolous and aimed primarily at thwarting North Offshore's prosecution of the original action; and second, North Offshore is not financially able to post countersecurity without releasing the RBD assets that it has already attached. In addition, RBD's counterclaim may not even constitute a mandatory counterclaim for purposes of Rule E(7). Accordingly, the motion by RBD for countersecurity is denied.

Dated: New York, New York
      November 29, 2007

_____
Sidney H. Stein, U.S.D.J.